# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| Anna Margaret Bailey, | ) |
| Plaintiff, | ) |
| v. | ) 6:21-cv-00731-LSC |
| Travelers Personal Insurance Company, | ) |
| Defendant. | ) |

## Memorandum of Opinion

Anna Margaret Bailey ("Bailey") brings this action against Travelers Personal Insurance Company ("Travelers"), asserting claims for breach of contract and bad faith. Travelers seeks summary judgment on both claims. For the following reasons, Travelers' motion is due to be granted in part (bad faith) and denied in part (breach of contract).

**I.     Background[1]**

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . .").

Bailey alleges that a major thunderstorm damaged her home in August 2019. (Doc. 1 at 2.) In particular, she claims that the storm caused the tongue and groove ceiling planks in her master bedroom to buckle and also damaged her carriage house and chimney. Bailey cannot recall when she first noticed the ceiling damage. (*See* doc. 25-5 at 38–41.)

On August 28, 2019, she reported the loss to Travelers. (Doc. 24 at 6.) Two days later, Justin Wood and Lance Findlay—both Travelers claim professionals—inspected Bailey's home and investigated her claim. (*Id.* at 7.) Their inspection lasted around three hours, and they discussed each item of alleged damage with Bailey and her contractor. (*Id.*)

During their inspection of the attic, Wood and Findlay "discovered that at least one of the ceiling joists supporting the tongue and groove ceiling panels had been cut" to install recessed lighting. (*Id.* at 9.) When they assessed the alleged damage to the carriage house, they "observed that [a] tree appeared to be growing around the roof and pushing the metal roof up." (*Id.* at 10.)

Following the inspection, Wood discussed Bailey's claim with his supervisor and decided that the claimed damages fell outside the scope of her policy coverage. (*Id.* at 11.) On September 12, 2019, Wood sent Bailey a denial letter. (*Id.*) Three months later, after Bailey's insurance agent contacted Wood and his supervisor to

discuss the claim, Travelers hired an engineering firm to inspect Bailey's home and offer its opinion as to the cause of Bailey's claimed damages. (*Id.* at 12.) Travelers asserts that "Vertex's findings confirmed the conclusions of Travelers' claim professionals; therefore, Travelers maintained its coverage decision regarding Plaintiff's residence." (*Id.* at 14.)

Bailey, of course, contests Travelers' findings. She has produced experts of her own who offer contrary conclusions as to the origin of the alleged damage.

## II.   Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence but should determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004)). In a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

### III. Analysis

**A. Breach of Contract**

"A contract of insurance, like other contracts, is governed by the general rules of contracts." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691 (Ala. 2001). The material elements necessary to establish a cause of action for breach of contract under Alabama law are: "(1) a valid contract binding the parties; (2) the plaintiff['s] performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metal Co. v. Hill*, 825 So. 2d 100, 105–06 (Ala. 2002) (citing *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 303 (Ala. 1999)).

In this case, the buckling of the tongue and groove ceiling in the master bedroom is the crux of the dispute. Travelers argues that faulty workmanship and long-term moisture intrusion—both policy exclusions—are to blame. In Travelers' account, these issues were already causing damage before the August 7th storm, which it claims is the only possible weather event that could have contributed to the damage. Bailey (according to Travelers) noticed ceiling damage before the August 7th storm, so the storm could not have been the initial cause of the damage. While Travelers' explanation is certainly plausible, the record contains sufficient evidence to create a genuine dispute of material fact.

To begin, the record does not necessarily support Travelers' timeline of

events. Bailey cannot recall with precision when she first noticed the damage. (*See* doc. 25-5 at 38–39.) It appears from Bailey's testimony that she noticed ceiling damage, left town, and returned to find more severe damage. (*See id*. at 39–41.) But it is a bridge too far to claim, as Travelers does, that Bailey noticed damage before the August 7th storm. Bailey's testimony suggests that she might have first noticed the damage after her return from Tallahassee—the date of which is also unclear. As a result, the sequence of events is far from certain.

Moreover, the physical cause of the warped ceiling is disputed. The deposition testimony of Ron Martin and Mark Hulsey supports Bailey's theory that the storm's displacement of the chimney caused the buckling—rather than long-term moisture intrusion.[2] (*See* doc. 25-28 at 19–25; doc. 25-26 at 13–15.) In addition, Martin and Kurt Mulder testified that the cut ceiling joists were unlikely to have caused the buckling of the ceiling planks. (*See* doc. 25-29 at 21; doc. 25-28 at 21–22.) Although the record in this case is as lengthy and (at times) obscure as *Ulysses*, the conflicting expert accounts and the uncertainty of the ceiling damage timeline are enough to preclude summary judgment on this issue.[3] To hold otherwise, the Court would have

---

[2] While Martin seems to suggest that there are potential alternative explanations for the buckling of the ceiling planks, he nonetheless maintains that the combination of a leaning chimney and water damage *from the storm* (not long-term moisture intrusion) is a plausible, independent cause of the ceiling damage. (*See* doc. 25-28 at 21, 22, 25, 32–34.)

[3] Bailey's breach of contract claim with respect to the carriage house damage also survives summary judgment. In an attempt to settle this portion of Bailey's claim, Travelers sent her a check

to weigh the evidence—which is, of course, forbidden.[4]

## B. Bad Faith

In Alabama, bad faith "has four elements plus a conditional fifth element, as follows:

> (a) an insurance contract between the parties and a breach thereof by the defendant;
> (b) an intentional refusal to pay the insured's claim;
> (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
> (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
> (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim."

*State Farm Fire & Cas. Co. v. Brechbill,* 144 So. 3d 248, 257 (Ala. 2013) (citation and internal quotation marks omitted).

As a technical matter, bad faith is a single tort, but there are two variants (or methods of proof): "normal" and "abnormal." *See id.* at 257–58. Elements (a)–(d)

---

for this damage, but Travelers simultaneously disputed its liability based on the findings of Mulder. (*See* doc. 25-16.) Bailey did not accept this offer of partial settlement. (Doc. 36 at 12.)

[4] Bailey's breach of contract claim with respect to the alleged chimney damage and the shingle damage survives summary judgment as well. (*See* Pl. Ex. 5 at 46–47; Pl. Ex. 22.) In a footnote to its reply brief, Travelers claims that Bailey "does not offer any argument or attempt to dispute the fact that the chimney of her house is not physically damaged and in need of replacement." (Doc. 41 at 6 n.4.) But this statement seemingly ignores a footnote in Bailey's brief that addresses the chimney damage. (*See* doc. 36 at 23 n.5.) As noted above, Martin and Hulsey offered testimony that supports Bailey's allegations of chimney damage. (*See* doc. 25-28 at 19–25; doc. 25-26 at 15–16.)

represent the "normal" variant while elements (a)–(e) represent the "abnormal" variant. *See id.* at 258. Notably, "[b]ad faith . . . is not simply bad judgment or negligence. It imports a dishonest purpose and means a breach of known duty, i.e., good faith and fair dealing, through some motive of self-interest or ill will." *Gulf Atlantic Life Ins. Co. v. Barnes*, 405 So. 2d 916, 924 (Ala. 1981). "The plaintiff in a bad faith case has a heavy burden of proof." *Blue Cross and Blue Shield of Ala. v. Granger*, 461 So. 2d 1320, 1325 (Ala. 1984).

Bailey claims that Travelers engaged in both "normal" and "abnormal" bad faith. Her arguments fail on both fronts because Travelers had at least an arguable reason to refuse payment, and there is no evidence of dishonest purpose or ill will.

Bailey argues that Travelers engaged in "abnormal" bad faith by failing to conduct a complete investigation into the cause of the ceiling damage. Even if Travelers' investigation was subpar, it did not engage in bad faith. *See Brechbill*, 144 So. 3d at 259 ("Alabama law is clear: ... *regardless of the imperfections of [the insurer's] investigation,* the existence of a debatable reason for denying the claim at the time the claim was denied defeats a bad faith failure to pay claim.") (citation omitted). Two days after Bailey submitted her claim, Travelers dispatched two of its claim professionals, Wood and Findlay, to survey the alleged damage. Bailey does not dispute that Wood and Findlay spent around three hours at her home and inspected

every area of alleged damage. (*See* doc. 24 at 31.) After the inspection, Wood discussed their findings with his supervisor before Travelers denied the claim. (*See id.* at 11.)

Wood and Findlay's belief that improperly cut joists contributed to the ceiling damage may prove incorrect, but it was an arguable reason to deny payment.[5] *See Brechbill*, 144 So. 3d at 258. It was not unreasonable to conclude that cut ceiling joists could cause the ceiling to buckle even if the plaintiff can ultimately show that this assessment was based on a faulty understanding of engineering principles. *See Singleton v. State Farm Fire & Cas. Co.*, 928 So. 2d 280, 287 (Ala. 2005) ("[M]ore than bad judgment or negligence is required in a bad-faith action."). Further, Wood and Findlay's extensive investigation indicates the absence of a dishonest purpose or ill will. *See Brechbill*, 144 So. 3d at 259–60.

Bailey's "normal" bad faith argument with respect to the carriage house also fails. Based on their observations, Wood and Findlay concluded that the natural

---

[5] Bailey filed a motion to exclude the opinion testimony of Wood and Findlay. This motion is due to be denied. Travelers does not rely on Wood and Findlay's testimony to establish causation (doc. 43 at 7); rather, they are lay witnesses who may testify to their personal observations and experience. *See United States v. Hill*, 643 F.3d 807, 841 (11th Cir. 2011) ("Rule 701 does not prohibit lay witnesses from testifying based on particularized knowledge gained from their own personal experiences."). In the context of Bailey's bad faith claim, their testimony provides an explanation for Travelers' coverage decision, which, as discussed above, was at least debatable. Travelers was possibly negligent in not obtaining the opinion of a licensed engineer before sending the denial letter. But Wood and Findlay, with multiple years of experience as adjusters, gave Travelers arguable grounds to deny Bailey's claim.

growth of a tree damaged the carriage house rather than wind from the storm. (*See* doc. 25-10 at 12.) Several experts have cast doubt on this assessment, but based on Mulder's report, Travelers continues to dispute its liability for this damage. (*See* doc. 25-4 at 14; doc. 41 at 11.) Travelers has possibly misjudged the cause of the damage to the carriage house, but its decision was at least arguable because the cause of the damage was and still is contested. (*See* doc. 25-4 at 14.) Additionally, as before, the record does not suggest a dishonest purpose or malign intent.

## IV. Conclusion

For the foregoing reasons, Travelers' motion is due to be granted with respect to the bad faith claim and denied with respect to the breach-of-contract claim. The Court will enter an Order consistent with this Memorandum of Opinion.[6]

**DONE** and **ORDERED** on January 24, 2023.

L. Scott Coogler
United States District Judge
211211

---

[6] Travelers also filed a motion to exclude the expert testimony of John H. Stevens and a motion to strike the affidavit of Ron Martin. In reaching this decision, the Court—to the best of its knowledge—does not rely on the testimony to which Travelers objects. Accordingly, these motions will be terminated as moot.